```
               UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF MISSOURI
                      EASTERN DIVISION


KMOV TV, INC.,                     )
                                   )
            Plaintiff,             )
                                   )
      vs.                          )     No. 4:07-CV-1647 CEJ
                                   )
BI-STATE DEVELOPMENT AGENCY        )
OF THE MISSOURI-ILLINOIS           )
METROPOLITAN DISTRICT, d/b/a       )
METRO,                             )
                                   )
            Defendant.             )
```

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant Bi-State Development Agency d/b/a "Metro" to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed. R. Civ. P. Plaintiff has responded, and the issues are fully briefed.

**I.  Legal Standard**

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S. Ct. 1955, 1965 (May 21, 2007) citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-

pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. <u>Id.</u> A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp.</u>, 127 S. Ct. at 1974. <u>See also</u> <u>id.</u> at 1969 ("no set of facts" language in <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), "has earned its retirement.") "Factual allegations must be enough to raise a right to relief above the speculative level." <u>Id.</u> at 1965.

**II. <u>Background</u>**

Defendant Bi-State Development Agency, d/b/a Metro, was created in 1949 by an interstate compact between Missouri and Illinois that was approved by the United States Congress pursuant to the Compact Clause of the United States Constitution, U.S. Const. art. I, § 10, cl. 3. Mo. Rev. Stat. § 70.370 (1998); 45 Ill. Comp. Stat. 100/1 (2008); S. J. Res. 174, 81st Cong., Pub. L. No. 81-743, 64 Stat. 568 (1950); H. J. Res. 465, 86th Cong., Pub. L. No. 86-303, 73 Stat. 582 (1959); S.J. Res. 127, 99th Cong., Pub. L. No. 99-106, 99 Stat. 477 (1985); H. J. Res. 78., 104th Cong., Pub. L. No. 104-125, 110 Stat. 883 (1996). The Compact creates the Bi-State Development Agency (d/b/a "Metro"), defines a regional Bi-State Development District and establishes a basic administrative structure for its governance. The chief purpose of the Agency is to coordinate interstate transportation systems and facilities, to operate and maintain infrastructure (including bridges, tunnels,

airports, and terminal facilities), and to "make plans for submission to the communities involved" for coordination of streets, highways, water supply and sewage works, land use patterns, and "other matters in which joint or coordinated action of the communities within the areas will be generally beneficial." Mo. Rev. Stat. § 70.370, Art. III, pars. 1-2. A Missouri court has found that Metro's purpose is "to provide a unified mass transportation system" for the bi-state region. Bartlett v. Bi-State Devel. Agency, 827 S.W.2d 267, 269 (Mo. Ct. App. 1992). The Compact has been amended, and the amendments approved by Congress, several times since its adoption.

Plaintiff is licensed to operate KMOV-TV, which broadcasts on Channel 4 in the St. Louis area. In this action, plaintiff seeks access to unredacted records of complaints and comments regarding Metro employees. Plaintiff alleges that Steve Chamraz, an investigative reporter at KMOV-TV, asked Metro to provide records of all complaints and comments regarding Metro employees received during a three-year period. In response, Metro provided a summary report showing the number and category of the complaints and comments. Mr. Chamraz then requested complete and detailed records for complaints and comments in the categories denoted "AD02 (Employee rude)," "OB (Operator behavior)," and "SE (Security)." Pet. at 4. Plaintiff alleges that Metro refused to provide unredacted copies of the records and indicated that it would charge a $1,950 fee for providing redacted records. Plaintiff claims that Metro's actions violate the Missouri Sunshine Law, Mo. Rev. Stat.

3

§ 610.010 *et seq*. Plaintiff asks the Court to order Metro to provide the records, unredacted and free of charge.[1]

Defendant Metro seeks to dismiss the action for failure to state a claim upon which relief can be granted. Metro argues that plaintiff's attempt to impose Missouri law on Metro, a bi-state entity, is in derogation of the Compact. Metro asserts that one state may not enact legislation that would burden the Compact unless the other state party to the Compact agrees, with limited exceptions. In the absence of such agreement, Metro argues, state laws that are inconsistent with the Compact are unenforceable against Metro.

Plaintiff responds that Metro is subject to the Missouri Sunshine Law because a provision of the Sunshine Law explicitly applies that statute to entities "established pursuant to section 70.370, RSMo."[2] Mo. Rev. Stat. § 610.010(4)(g). Plaintiff also asserts that it is Metro's policy to make records available to the public unless Missouri or Illinois public records laws would provide for closed records.[3] Finally, plaintiff asserts that

---

[1] In the petition, plaintiff asked the Court to impose a statutory fine on Metro for failure to provide the records. Plaintiff has withdrawn the request, acknowledging that the fine, while allowed by Missouri Sunshine Law, is inconsistent with the Illinois Freedom of Information Act, which contains no provision for fines when an agency refuses to release records.

[2] Section 70.370 of the Missouri Revised Statutes is the codification in the Missouri statutes of the Compact. The Compact is codified in the Illinois statutes at 45 Ill. Comp. Stat. 100/1.

[3] The Illinois public records act is the Illinois Freedom of Information Act, 5 Ill. Comp. Stat. 140/1 *et seq.* (2008)

Illinois and Missouri both have open-records laws and share an "expansive view of the public's right to know what its government is doing." See Resp. to Mot. Dismiss at 6. For the foregoing reasons, plaintiff claims that application of the Missouri Sunshine Law does not burden the Compact or intrude on Illinois' interest in the bi-state agency.

In reply, Metro maintains that even though the Compact is codified in the Missouri Revised Statutes, Metro was created by the Compact itself, and not by the Missouri Constitution or Missouri statutes. Thus, Metro asserts, it is not a "public governmental body" subject to the disclosure requirements of the Missouri Sunshine Law. See Mo. Rev. Stat. § 610.011. Further, Metro claims that its own internal public records policy does not render it subject to the Sunshine Law.

### III. Discussion

#### Status of Compact Entities

The Compact Clause of the United States Constitution, art. I, § 10, cl. 3, provides, "No State shall, without the consent of Congress, enter into any Agreement or Compact with another State."

Entities created by interstate compacts have a unique legal status. Bi-state entities "are creations of three discrete sovereigns: two States and the federal Government." Hess v. Port Authority of Trans-Hudson Corp., 513 U.S. 30, 41 (1994), quoting V. Thursby, Interstate Cooperation: A Study of the Interstate Compact

---

(effective July 1, 1984). The Missouri open records act is the Missouri Sunshine Law, Mo. Rev. Stat. § 610.010 et seq. (2000).

5 (1953) (additional citations omitted). As a creation of two sovereigns, the "political accountability" of a bi-state entity "is diffuse." Id. at 42. "'An interstate compact, by its very nature, shifts a part of a state's authority to another state or states, or to the agency the several states jointly create to run the compact.'" Id., quoting M. Ridgeway, Interstate Compacts: A Question of Federalism 300 (1971). See also State v. Sims, 341 U.S. 22, 31 (1951) (Interstate compacts "adapt[] to our Union of sovereign States the age-old treaty-making power of independent sovereign nations."); and Entergy Arkansas, Inc. v. Nebraska, 358 F.3d 528, 542 (8th Cir. 2004) (An interstate compact "represents a political compromise" between states, and not a "commercial transaction.").

Interstate compacts thus entail the cession of elements of sovereignty by signatory states:

> [W]ithin any single State in our representative democracy, voters may exercise their political will to direct state policy; bi-state entities created by compact, however, are not subject to the unilateral control of any one of the States that compose the federal system.

Hess, *supra*, at 42, quoting M. Ridgeway, *supra*. Because parties to a compact have given up some sovereign powers, no party can unilaterally subject the compact entity to a particular policy or law.

### Interpretation of Interstate Compacts

The interpretation of an interstate compact is a matter of federal law. "[C]ongressional consent 'transforms an interstate compact within [the Compact] Clause into a law of the United

6

States.'" New Jersey v. New York, 523 U.S. 767, 811 (1998) (citations omitted). An interstate compact is a contract, "a legal document that must be construed and applied in accordance with its terms." Texas v. New Mexico, 482 U.S. 124, 128 (1987), citing Petty v. Tennessee-Missouri Bridge Comm'n, 359 U.S. 275, 285 (1959) (Frankfurter, J., dissenting); and West Virginia ex rel. Dyer v. Syms, 341 U.S. 22, 28 (1951). "Just as if a court were addressing a federal statute . . . the 'first and last order of business' of a court addressing an approved interstate compact 'is interpreting the compact.'" New Jersey v. New York, 523 U.S. 767, 811 (1998), quoting Texas v. New Mexico, 462 U.S. 554, 564 (1983). See also New Jersey v. Delaware, 128 S.Ct. 1410, 1420 (2008), quoting New Jersey v. New York, 523 U.S. at 811 ("Interpreting an interstate compact, '[j]ust as if [we] were addressing a federal statute,' . . . it would be appropriate to construe a compact term in accord with its common-law meaning.").

"[U]nless the compact to which Congress has consented is somehow unconstitutional, no court may order relief inconsistent with its express terms." New Jersey, 523 U.S. at 811. Principles of statutory interpretation require courts "to strictly construe surrenders of sovereignty." Intl. Union of Operating Engineers, Local 542 v. Delaware River Joint Toll Bridge Comm'n, 311 F.3d 273 (3d Cir. 2002) (hereinafter Local 542).

Under decisions by the United States Court of Appeals for the Eighth Circuit and the Missouri Supreme Court, "one party to an interstate compact may not enact legislation that would impose

7

burdens upon the compact absent the concurrence of the other signatories." Bi-State Devel. Agency of the Missouri-Illinois Metropolitan District v. Director of Revenue, 781 S.W.2d 80, 82 (Mo. banc 1989), citing Kansas City Area Transp. Authority v. State of Missouri, 640 F.2d 173, 174 (8th Cir. 1981). A state party to an interstate compact may "legislate in respect of matters covered by the compact so long as such legislative action is in approbation and not in reprobation of the compact." Kansas City Area Transp. Auth.,640 F.2d at 174, citing Henderson v. Delaware River Joint Toll Bridge Comm'n, 66 A.2d 843, 849 (1949). See also Bi-State, 781 S.W.2d at 82.

**The Compact Creating the Bi-State Development Agency**

The Compact grants several powers to Metro, including the power "[t]o exercise such additional powers as shall be conferred on it by the legislature of either state concurred in by the legislature of the other or by act of congress." Mo. Rev. Stat. § 70.370, art. III, para. 8. The Compact requires a state party to seek the other state's concurrence in legislation conferring the right to exercise "additional powers." Because no part of the Compact addresses the handling of complaints or comments regarding Metro employees, the decision by Metro how to handle such information must fall under the exercise of "additional powers." The Court thus must determine whether plaintiff has shown that Illinois "concurred in" the decision by the Missouri legislature to apply the Sunshine Law to Metro.

Courts interpret "concurred in" language in interstate compacts differently. In Local 542, 311 F.3d 273, the court summarized the two predominate approaches (exemplified by the courts of New York and New Jersey) to interpreting compacts that contain "language enabling one state to modify the compact through legislation 'concurred in' by the other." Id. at 276. Under the New York approach, courts interpret the "concurred in" language in a compact "to permit application of states' laws to the compact [only] if the states' legislation contains an express statement that they intend to amend the compact." Local 542, 311 F.3d at 276. The fact that two states "have evinced the same, or similar, public policy" on an issue is not sufficient to "render [a compact] properly amended or supplemented" such that the compact entity would be subject to one state's law on the issue. Id. at 277, citing Malverty v. Waterfront Comm'n of New York Harbor, 524 N.E.2d 421, 422 (N.Y. Ct. App. 1988).[4]

Under the more liberal New Jersey approach,[5] "the passage of similar legislation by compacting states" satisfies the "concurred

---

[4] Cf. Eastern Paralyzed Veterans Ass'n v. City of Camden, 545 A.2d 127, 136 (N.J. 1988) (Even if the compacting states have "substantially similar" policies regarding an issue, a "declaration of policy does not . . resolve the concrete application of principle to policy when federal law is applicable. . . . Fundamental policy questions of this nature, subject to accommodation with federal law, are best resolved by the compact states.")

[5] The Court refers to this approach as the "New Jersey" approach for ease of reference, but as one court has noted, New Jersey courts do not uniformly adopt the approach. See Local 542, 311 F.3d at 276.

9

in" test and implies "an intent on the part of both states to apply the legislation to a bi-state entity." Local 542 at 277. New Jersey courts have held that the "concurred in" language "will be effective to apply the states' laws that are 'complementary and parallel' even where there is no stated intent to amend the compact." Id.

The approach adopted by courts in the Eighth Circuit requires "legislative approval" by other compact signatories of state legislation that would burden an interstate compact. The "'concurrence' of one state to a legislative amendment of another state imposing" a burden on an interstate compact "requires legislative approval by the 'burdened' state." Nebraska ex rel. Nelson v. Central Interstate Low-Level Radioactive Waste Comm'n, 902 F.Supp. 1046, 1049 (D. Neb. 1995).

Under the law of this Circuit and the State of Missouri, a state may unilaterally legislate with respect to matters covered by the Compact (here, matters related to the operation of the Metro transportation system), if such legislation is in approbation of the Compact. Kansas City Area Transp. Auth., 640 F.2d at 174. A state may not unilaterally legislate regarding "additional powers" without the concurrence (i.e. "legislative approval") of the other state.

The Eighth Circuit approach is congruent with the New York approach requiring explicit approval by both states, and not merely the enactment of "complementary and parallel" legislation in both

10

states.[6] Additionally, requiring explicit approval by both states is consistent with the rule of statutory interpretation that mandates strict construction of interstate compacts, which are surrenders of sovereignty.[7] See Local 542, 311 F.3d at 273.

---

[6] One Missouri Court of Appeals case departed from precedent when it first noted that one party to an interstate compact cannot enact legislation which would burden the compact "absent the concurrence of other signatories." Redbird Engineering Sales, Inc. v. Bi-State Devel. Agency of Missouri-Illinois Metropolitan Dist., 806 S.W.2d 695 (Mo. Ct. App. 1991), citing Kansas City Area Transp. Auth. v. State of Missouri, 640 F.2d at 174. The Redbird Engineering court then determined that "the corollary of that proposition is that the agency may be made subject to complimentary or parallel state legislation." Id., citing Eastern Paralyzed Veterans Ass'n v. City of Camden, 545 A.2d 127, 133 (N.J. 1988). The Redbird case thus appears to conflict with the weight of the precedent in the Missouri and Eighth Circuit courts.

[7] A case involving similar issues as the action now before the Court discussed the rationale for the stricter approach requiring explicit approval from other signatories to apply one state's laws to a bi-state entity. In C.T. Hellmuth & Associates v. Washington Metropolitan Area Transit Authority, 414 F.Supp. 408 (D. Md. 1976), the court concluded that "the mere fact that Virginia and the District [of Columbia] have adopted freedom of information laws can hardly be taken as a tacit agreement on their part that" the tri-state Washington Metropolitan Area Transit Authority "should be governed by Maryland law." Id. The court was also "not persuaded by the alternative premise implicit in [the] argument, that the existence of comparable legislation eliminates the possibility that one party may impinge upon the others' interests." Id. at 410. Where the two states' laws were not identical, the differences between them reflected "considered policy decisions on the part of the respective jurisdictions as to the types of information which should be accessible to the public and the circumstances under which it will be made available. Regardless of how similar the laws may be, plainly Maryland may not impose its preferences in this regard upon Virginia and the District, for such an imposition, however minimal, is nonetheless an intrusion upon their interests and in derogation of the compact." Id. at 410.

11

In this action, plaintiff seeks to apply the Missouri Sunshine Law to require Metro to divulge the substance of complaints and comments received about Metro employees, including the names of the employees, and to provide this information free of charge. Neither party has asserted that the Missouri legislature sought or received the explicit concurrence of the Illinois legislature before enacting the provision of the Sunshine Law that applies to Metro. In the absence of such explicit agreement by Illinois to apply the Sunshine Law to Metro, it cannot be said that Illinois "concurred in" the decision to do so.

Plaintiff alleges that the Court must determine whether the existence of open records laws in both Missouri and Illinois is sufficient to show that the application of the Sunshine Law to Metro is in approbation and not in reprobation of the Compact. Plaintiff has not shown that the handling of complaints and comments regarding Metro employees is a matter covered by the Compact. And, as noted above, the Eighth Circuit and the Missouri courts have not held that the existence of "complementary and parallel" legislation implies concurrence by the states to apply legislation that burdens a Compact to the Compact entity. The Court need not examine Illinois' and Missouri's open records laws, because explicit approval by the Illinois legislature to apply the Missouri Sunshine Law to Metro is required, and the plaintiff has not alleged that such approval was granted.

**Conclusion**

The Court finds that the Sunshine Law is unenforceable against Metro on the facts as alleged by plaintiff. Plaintiff thus fails to state a claim upon which relief can be granted, and the Court will grant Metro's motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion to dismiss [# 8] is **granted.**

A separate order of dismissal will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of August, 2008.